IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | **BRANDON FORSHEE,** | ) |
| | | ) |
| | **Plaintiff,** | ) |
| v. | | ) |
| | | ) |
| 1. | **TINKER FEDERAL CREDIT** | ) |
| | **UNION,** | ) |
| | | ) |
| | **Defendant.** | ) |

**CIV-17-** 129-F

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

## COMPLAINT

**COMES NOW** the Plaintiff, Brandon Forshee, and for his Complaint in the above-entitled action, alleges and states as follows:

### PARTIES

1.      Plaintiff, Brandon Forshee, is a Black adult male who resides in Oklahoma County, Oklahoma.

2.      Defendant is Tinker Federal Credit Union, an entity doing business in Oklahoma County, Oklahoma.

### JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on claims of (a) retaliation for and interference with Plaintiff's use of medical leave under the Family Medical Leave Act ("FMLA"); and (b) race discrimination in violation of 42 U.S.C. § 1981.

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C.

§1331.

5.      All of the actions complained of herein occurred in Oklahoma County, Oklahoma.  Defendant is doing business in such county and may be served in said county. Oklahoma County is located in the Western District of Oklahoma.  Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6.      Plaintiff (who is a Black male) began working with Defendant as a part-time Teller on or about December 22, 2008.  In or around February 2010, Plaintiff was hired as an Adjuster I by Adjuster Supervisor Frances Womack (who is Black).  In or around December 2014, Plaintiff was promoted to an Adjuster II by Womack.

7.      Initially, Plaintiff's role as an Adjuster was to call members with past due accounts in an attempt to make payment arrangements for the accounts.  Upon his promotion to Adjuster II, Plaintiff was assigned to assist Specialist Tempura Stevens (who is Black) with collections for Defendant's Legal Department.

8.      Throughout his lengthy period of employment, Plaintiff's job performance was at least satisfactory, if not excellent.  In fact, on or about April 3, 2015, Plaintiff received a pay increase following a "Commendable" rating on his annual performance evaluation.

9.      Despite his "Commendable" job performance, Plaintiff was terminated on or about August 28, 2015 by Senior Vice President of Human Resources Susan Rogers (who is White).  Rogers told Plaintiff that the termination had nothing to do with his work

performance, but was because Plaintiff allegedly made excessive personal telephone calls at work.  However, such reason was merely pretext.

10.     Plaintiff had not been told that he could not make personal calls at work, or that he was making too many personal calls.  And, Plaintiff had kept his personal calls to a minimum following a meeting with Rogers about his personal calls in or around late July 2015.

11.     Significantly, other non-Black employees and/or employees who had not recently used FMLA leave made personal calls on-the-clock and were not terminated.  In fact, following an audit of the Adjustments Department in or around June 2016, approximately thirteen (13) employees were found to have made personal calls on-the-clock and/or engaged in call padding, a practice wherein the employee makes false phone calls to boost their call goals or quotas.  These individuals logged approximately nine (9) hours to thirty-seven (37) hours of personal calls in a one (1) month period.  Of the thirteen (13) employees, the only ones fired were Plaintiff and two other Black employees.  And, one of the terminated Black employees had approximately nineteen (19) hours of personal calls, while a retained non-Black employee logged twenty (20) hours of personal calls.

12.     Moreover, Plaintiff observed racially discriminatory practices during his employment with Defendant.  For instance, Plaintiff applied for more than one promotion with Defendant in the Member Outreach Department while he was employed as an Adjuster. Plaintiff observed that external White candidates were hired over Plaintiff, although Plaintiff

was qualified for such positions.  Upon information and belief, Rogers was involved in these hiring decisions.

13.     In addition, Plaintiff's termination was within days of his return from FMLA leave.  More particularly, in or around July 2015, Plaintiff informed Womack that Plaintiff required time off work to care for his wife after a surgical procedure. Womack provided Plaintiff with FMLA forms to request the time off, which Plaintiff submitted on or about August 5, 2015. However, Plaintiff did not receive a response.  Plaintiff asked Womack periodically about the status of his FMLA request.  Womack indicated that human resources was "behind" in processing his request, but that Plaintiff was approved to be out two (2) weeks regardless.

14.     At the conclusion of this two (2) week period, Plaintiff's wife was continuing to recover from her surgery and needed assistance. However, because Defendant had not processed his first FMLA request, Plaintiff felt compelled to return to work on or about August 26, 2015.

15.     Plaintiff was then terminated on or about August 28, 2015 for pretextual reasons as set forth above.

16.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - FMLA

For his first cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

17.      The matters alleged above constitute interference with and retaliation for

Plaintiff's use of medical leave in violation of the Family and Medical Leave Act ("FMLA").

18.      Plaintiff was entitled to medical leave because he required time off to care for

his wife due to a serious health condition (as set forth above) and worked for Defendant (i.e.,

an entity with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for

more than one (1) year and for more than 1,250 hours within the one year prior to his need

for leave.

19.      Defendant retaliated against Plaintiff for his use of FMLA leave by terminating

Plaintiff within days of his return to work following his exercise of FMLA rights.

Defendant's actions were taken in response to Plaintiff's exercise of rights under the FMLA.

20.      Defendant interfered with Plaintiff's right to use FMLA leave by failing to

process his FMLA paperwork, resulting in Plaintiff returning to work rather than continue

his FMLA leave.

21.      As set forth herein, Defendant's actions were in willful violation of the law.

Defendant was aware of the FMLA and the requirements contained therein, but willfully

violated Plaintiff's FMLA rights.

22.      As a direct and proximate result of Defendant's actions, Plaintiff has suffered

injuries and is entitled to recover of all damages, including, but not limited to, lost income,

past and future, liquidated damages, based on the willfulness of Defendant's violation of the

FMLA, attorneys' fees and costs.

## COUNT II - Race

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

23.     The matters alleged above constitute violations of 42 U.S.C. § 1981, as amended, in the nature of race discrimination.

24.     Plaintiff is entitled to relief under federal law for race discrimination because, as stated herein, Plaintiff is Black; he was qualified for his job; he was terminated from his employment with Defendant; and his job was not eliminated.

25.     Plaintiff is further entitled for relief because he is Black, he applied for positions for which he was qualified, he was rejected for the positions, and the positions were filled with non-Black candidates.

26.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

27.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, liquidated damages, and punitive

damages together with pre- and post-judgment interest, costs, attorney's fees and such other

relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 8th DAY OF FEBRUARY, 2017.**

s/ Jana B. Leonard

JANA B. LEONARD, OBA# 17844

LAUREN W. JOHNSTON, OBA #22341

LEONARD & ASSOCIATES, P.L.L.C.

8265 S. WALKER

OKLAHOMA CITY, OK 73139

(405) 239-3800        (telephone)

(405) 239-3801        (facsimile)

leonardjb@leonardlaw.net

johnstonlw@leonardlaw.net

JURY TRIAL DEMANDED

ATTORNEY LIEN CLAIMED
